UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Edgar J. Dietrich,                                          Case No. 16-11049

                Plaintiff,                       Terrence G. Berg
v.                                                          United States District Judge

City of Grosse Pointe Park and Dale Krajniak,               Stephanie Dawkins Davis
                                                            United States Magistrate Judge
                Defendants.
_____/

**REPORT AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (Dkt. 20) GRANT DEFENDANTS' MOTION FOR
SANCTIONS (Dkt. 24) AND DISMISS AS MOOT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DKT. 31)**

## I.   PROCEDURAL HISTORY

On March 18, 2016, plaintiff Edgar J. Dietrich filed an action against

defendants City of Grosse Pointe Park, and City Manager, Dale Krajniak.  (Dkt.

1).  The complaint alleges that defendants deprived plaintiff of his civil rights

based on the defendants' tortuous conduct, specifically violating plaintiff's Fifth

Amendment right to due process.  Plaintiff also alleges various state claims,

including tortuous interference with business relationships, conversion, and breach

of contract.  On April 14, 2016, the matter was reassigned from District Judge

David M. Lawson and Magistrate David R. Grand to District Judge Terrence G.

Berg and the undersigned.  (Dkt. 12).  On May 2, 2016, Judge Berg referred all

1

pretrial matters to the undersigned.  (Dkt. 14).  On May 25, 2016, all defendants

filed a motion to dismiss plaintiff's complaint. (Dkt. 20).  Plaintiff responded to

the motion to dismiss on June 17, 2016 (Dkt. 26), and plaintiff filed a reply (Dkt.

29).  On June 20, 2016, all defendants filed a motion for sanctions under Fed. R.

Civ. P. 11.  (Dkt. 24).  On July 6, 2016, plaintiff responded to defendants' motion

for sanctions (Dkt. 28), and defendants replied (Dkt. 29).  On November 14, 2016,

plaintiff filed a counter-motion for summary judgment (Dkt. 31) to which

defendants responded (Dkt. 32).

The undersigned has reviewed the pending motions and responses and is

otherwise fully advised.  For the following reasons, the undersigned

**RECOMMENDS** that defendants' motion to dismiss (Dkt. 20) be **GRANTED**.

The undersigned further **RECOMMENDS** that defendants' motion for sanctions

(Dkt. 24) be **GRANTED**.  The Court additionally **RECOMMENDS** that

plaintiff's counter-motion for summary judgment (Dkt. 31) be **DISMISSED AS

MOOT**.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that on January 1, 2006, defendant Dale Kraniak, in his

capacity as manager of the City of Grosse Pointe Park entered into a lease with the

Dietrich Family Trust (the "Trust") for the premises located at 15001 Charlevoix,

Grosse Pointe Park, Michigan (the "Property").  (Dkt. 1, Pg ID 3).  This property

became the location for La Chateau Art Gallery & Custom Framing (the "Gallery") and all business transactions relating to the Gallery were transacted with Mr. Kraniak.  (*Id*.)  On August 26, 2013, the Wayne County Circuit Court ("WCCC") appointed a receiver over the Gallery in an attempt to collect on a judgment against plaintiff.[1]  (*Id*.)  While there was an $11,000,000 judgment, plaintiff says that a sealed settlement agreement between the parties in the amount of two million dollars was paid by the insurance company of the majority defendant in that case, Marshall Folgelson.  Plaintiff contends that the settlement agreement ended the entire case and there is no remaining judgment against the two defunct law offices or against plaintiff personally.

Four days following the appointment of the receiver, on August 30, 2013, the WCCC entered an order indicating that plaintiff, the Gallery, and all agents thereof were directed to cease and desist from interfering in the receiver's exercise of his duties.  (Dkt. 20-4, Pg ID 320-323).  Nevertheless, on November 11, 2013, the WCCC entered a judgment of criminal contempt against plaintiff "for repeatedly violating" WCCC's orders.  (Dkt. 20-5, Pg ID 324-326).  Next, plaintiff turned to the United States Bankruptcy Court; however, the Bankruptcy Court

---

[1] The state court action involved an effort to collect on a judgment against plaintiff that arose from a legal malpractice action.  The Wayne County Circuit Court concluded that the Gallery "had been utilized as a vehicle for transferring and hiding property which would be used to satisfy the judgment."  (Dkt. 20-2, Pg ID 308).

3

entered an order denying plaintiff's motion to enforce a mandatory stay under 11

U.S.C. § 362 holding that the appointment of the receiver by the WCCC remained

in full force and effect and "did not violate the automatic stay imposed by 11

U.S.C. § 362 of the Bankruptcy Code." (Dkt. 20-6, Pg ID 327-329). The

Bankruptcy Court also concluded that the WCCC order holding plaintiff in

contempt "remained in full force and effect" and was not in violation of the

automatic stay imposed by 11 U.S.C. § 362. (*Id*.) Plaintiff (through his son) then

brought an action in the Grosse Pointe Park Municipal Court ("GPPMC") on

November 15, 2013. (Dkt. 20-7, Pg ID 330-336). In that action, plaintiff asked

the GPPMC to allow him to enter the Gallery premises, and asked for injunctive

relief requiring the City's Department of Public Safety to stop "purposefully

violating the lease between plaintiff and the City of Grosse Pointe Park." (*Id*.)

That case was dismissed with prejudice for lack of jurisdiction. (Dkt. 20-8, 337-

344).

Then, in January 2014, plaintiff filed an action in the United States District

Court for the Eastern District of Michigan claiming that he had been wrongfully

deprived of access to his property. (Dkt. 20-9, Pg ID 134-142). Plaintiff was

represented by counsel, but soon after it was filed, the case was voluntarily

dismissed without prejudice. (Dkt. 20-10, Pg ID 143-145). After the voluntary

dismissal, plaintiff, acting in his own behalf, filed a motion for reinstatement

asserting similar claims under federal law. (Dkt. 20-11, Pg ID 146-173).

Defendants opposed plaintiff's motion arguing that the court should not reinstate

the complaint because the *Rooker-Feldman* doctrine would preclude plaintiff's

claims, among other issues. (Dkt. 20-12, Pg ID 174-261). The district court

denied plaintiff's motion to reinstate and cautioned plaintiff:

> To the extent that Plaintiff believes he has a viable claim
> against any of the Defendants, the Court would
> nevertheless caution Plaintiff to carefully review the
> arguments raised in Defendants' proposed motion to
> dismiss, particularly those related to the *Rooker-Feldman*
> doctrine. *See* Dkt. 14, Ex. 1, pp. 4-6. Although
> Defendants' proposed motion is not properly before the
> Court, it raises significant questions as to subject matter
> jurisdiction—questions that would necessarily need to be
> resolved if Plaintiff were to re-file this action. Moreover,
> the Court would remind Plaintiff of the requirements of
> Federal Rule of Civil Procedure 11, stating both (1) that
> the filing of a complaint constitutes a certification that
> "the claims, defenses, and other legal contentions are
> warranted by existing law or by a *nonfrivolous* argument
> for extending, modifying, or reversing existing law or for
> establishing new law," Fed. R. Civ. P. 11(b)(2)
> (emphasis added), and (2) the "court may impose an
> appropriate sanction on any…party that violated [Rule
> 11(b)]." Fed. R. Civ. P. 11(c).

*See Dietrich v. Grosse Pointe Park, City of, et al.*, No. 14-cv-10264, slip op. at 18

(E.D. Mich. July 3, 2014) (Dkt. 20-13).

The City then initiated eviction proceedings against the Dietrich Trust (the

lessor of the Property) in 2014. On July 9, 2014, the Grosse Pointe Woods

Municipal Court ("GPWMC") entered an order terminating the lease and ordered

the Dietrich Trust to vacate the Property.  Following an appeal by the Dietrich

Trust, the parties entered into a Release Agreement (the "Release") on or about

August 22, 2014 in which plaintiff signed for himself and on behalf of the Dietrich

Trust.  (Dkt. 20-14, Pg ID 271).  The Release provides in relevant part that the

Dietrich Parties (defined by the Release as plaintiff together with the Dietrich

Trust) release all present and future claims "arising from claims which are the

subject matter of the Lease, Eviction, and Appeal against the City and its past and

present employees, agents, and/or representatives, and any and all claims which

were, or could have been , or can be asserted against its past and present

employees, agents, and/or representatives."  (Dkt. 20-14, Pg ID 267-271).

Plaintiff then filed this action on March 18, 2016.  (Dkt. 1).  Before it was

served, however, defendants' counsel reminded plaintiff of the terms in the

Release and asked plaintiff to dismiss the complaint.  (Dkt. 20-15, Pg ID 272-

275).  Defendants' counsel also warned plaintiff that they would seek sanctions

pursuant to Fed. R. Civ. P. 11.  (*Id.*)

Defendants argue in their motion to dismiss that plaintiff's complaint is

barred by the *Rooker-Feldman* doctrine and also by the parties' August 2014

Release.  Defendants ask the court to dismiss plaintiff's complaint with prejudice

and ask the court to enter an order prohibiting plaintiff from filing any future

6

actions against these same defendants (as well as the City's officials, employees and departments) without leave of the court.[2]

## III.  LEGAL ANALYSIS

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted)). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

---

[2]  Defendants note that on the same day that plaintiff filed the instant action, plaintiff contemporaneously filed a separate complaint against the receiver appointed by the WCCC, Basil T. Simon. *See Dietrich v. Simon*, 16-11071 (E.D. Mich. filed Mar. 18, 2016). On October 18, 2016, District Judge Sean F. Cox adopted the report and recommendation of Magistrate Judge David R. Grand recommending the dismissal of Dietrich's federal claim for lack of subject matter jurisdiction pursuant to the *Barton* Doctrine. (*Id*., Pg ID 147-149).

true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

> B.     Legal Analysis

>> 1.     *Rooker-Feldman Doctrine*

Defendants claim that the court lacks subject-matter jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine because plaintiff filed this action to challenge the Wayne County Circuit Court's Order Granting Plaintiff's Motion for the Appointment of Receiver.  (Dkt. 20-2, Pg ID 95-103).  Indeed, the *Rooker-Feldman* doctrine raises a jurisdictional bar that prohibits a federal district court from engaging in appellate review of state-court judgments.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  More recently, the United States Supreme Court has clarified the scope of the *Rooker-Feldman* doctrine, holding that it is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Sixth Circuit has explained that the relevant inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine "is the source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id*. An independent claim will not divest a federal district court of subject-matter jurisdiction, even if it may deny a legal conclusion of the state court. *Id*. at 392. To determine the source of the injury, a court must refer to the plaintiff's request for relief. *Berry v. Schmitt,* 688 F.3d 290, 299 (6th Cir. 2012) (quoting *Evans v. Cordray*, 424 Fed. Appx. 537, 539 (6th Cir. 2011)).

Here, plaintiff's complaint makes clear that the Wayne County Circuit Court's Order Granting Motion for the Appointment of Receiver is the source of his claimed injuries, and to grant the relief that plaintiff requests would require the court to reverse a state-court decision granting the appointment of a receiver. This is precisely the type of federal district court action prohibited by the *Rooker-Feldman* doctrine. As such, to the extent that plaintiff seeks a federal reversal of the state-court Appointment of Receiver, dismissal of this matter under the

*Rooker-Feldman* doctrine is appropriate. *See Colbert v. Fed. Nat. Mortg. Ass'n*,

No. 12-13844, 2013 WL 1629305, at \*7 (E.D. Mich. Apr. 16, 2013) (quoting

*Givens v. Homecomings Fin.*, 278 Fed. Appx. 607, 609 (6th Cir. 2008)).

      2.     *Failure to State a Claim*

Alternatively, defendants claim that the complaint should be dismissed

because plaintiff has failed to state a claim upon which relief can be granted.  In

other words, defendants allege that plaintiff has failed to meet the Fed. R. Civ. P.

12(b)(6) standard.  Specifically, defendants argue that plaintiff's complaint should

be dismissed because he released all claims against defendants in August 2014.  At

that time, plaintiff, personally, and acting as trustee for The Dietrich Trust

(collectively "Dietrich Parties"), entered into a "Release Agreement" with the City

of Grosse Pointe Park in which the Dietrich Parties agreed to release all present

and future claims against the defendants.  (Dkt. 20-14, Pg ID 269).  The Release

provision states:

> The Dietrich Parties, including its predecessors, agents,
> successors, assigns, joint venturers, partners, current and
> former employees, servants, representatives, officials,
> attorneys, associates, and trusties of the foregoing
> persons, and any other party who may claim under or
> through them hereby knowingly and voluntarily release,
> forgive, absolve and discharge all rights, claims,
> demands, damages, actions, and causes of action, which
> The Dietrich Parties and its above-mentioned others now
> have or may have in the future, known or unknown,
> foreseen or unforeseen, arising from the claims which are

> the subject matter of the Lease, Eviction, and Appeal
> against the City and its past and present employees,
> agents, and/or representatives, and any and all claims
> which were, or could have been, or can be asserted
> against its past and present employees, agents, and/or
> representatives.

(*Id*. at Pg ID 269).

Ordinary contract principles govern whether a release provision is valid. *Soltis v. J.C. Penney Corp., Inc*., 635 Fed. Appx. 245, 248 (6th Cir. 2015).  One guiding principle is that the contract must be construed as a whole.  (*Id*.)  "Moreover, the 'cardinal rule' in contract interpretation is to ascertain the parties' intent." *Id*. (*citing  Omnicom Grp., Inc*. v. *880 W. Long Lake Assocs*., 504 Fed. Appx. 487, 490 (6th Cir. 2012) (quoting *McIntosh v. Groomes*, 227 Mich. 215 (1924)).  "In an unambiguous contract, intent is established solely based on the plain language of the contract because in such a case, no outside evidence can better evince the intent of the parties than the writing itself." *Id.* (citation omitted).  However, if the contractual language is "reasonably susceptible to more than one interpretation," courts deem it ambiguous and will look to extrinsic evidence to ascertain the parties' intent. *Id.* (citing *Shay v. Aldrich*, 487 Mich. 648, 790 (2010)).  "When a release is challenged, the party seeking to avoid the release must prove by a preponderance of the evidence that the release should be set aside." *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006) (quoting *Binary v. Carrington*, 163 Mich. App. 599, 603 (1987)).

Plaintiff does not argue that the Release is ambiguous.  Nevertheless, the undersigned has reviewed the Release and concludes that it is unambiguous.  The language releases "all rights, claims, demands, damages, actions, and causes of action, which The Dietrich Parties and its above-mentioned others now have or may have in the future, known or unknown, foreseen or unforeseen, arising from the claims which are the subject matter of the Lease, Eviction, and Appeal against the City and its past and present employees, agents, and/or representatives, and any and all claims which were, or could have been, or can be asserted against its past and present employees, agents, and/or representatives."  (Dkt. 20-14, Pg ID 269).  This Sixth Circuit has upheld the similar releases of *all* claims indicating, "there is no broader classification than the word 'all.'" *Soltis*, at 248 (citing *Cole v. Ladbroke Racing Mich., Inc.*, 241 Mich. App. 1 (2000)).  The undersigned agrees with defendants that the terms of the parties' Release unambiguously contemplate the release of all claims asserted by plaintiff in his Complaint.  Further, plaintiff signed the Release in August 2014.  All of defendants' alleged acts that support the claims in the Complaint occurred prior to plaintiff signing the Release.

Plaintiff's argument that he signed the Release under duress is likewise unavailing as plaintiff has failed to sufficiently plead that his waiver was not knowing and voluntary.  Duress involves an "unlawful or wrongful act or threat that overcomes the free will of the victim." *Bell v. Gen. Motors*, No. 11-10905,

2012 WL 2680909, at *3 (E.D. Mich. July 6, 2012) (quoting *Gascho v. Scheurer*

*Hosp.*, 400 Fed. Appx. 978, 982 (6th Cir. 2010)); *see also Harvard Drug Group,*

*LLC v. Linehan*, 684 F. Supp. 2d 921, 926 (E.D. Mich. 2010) (internal quotation

marks omitted) ("Duress requires compulsion or coercion by which one is illegally

forced to act by fear of serious injury to person, reputation or fortune."); *Hackley*

*v. Headley*, 45 Mich. 569 (Mich. 1881) ("Duress exists when one by the unlawful

act of another is induced to make a contract or perform some act under

circumstances which deprive [her] of the exercise of free will.").  Against this

exacting standard, plaintiff has simply not pleaded any facts that he was required

to sign the Release against his free will.  The only argument advanced by plaintiff

was that he was forced to sign the Release under duress knowing that he was

going to be evicted and his records and personal belongings were within the

Property.  However, as noted by defendants, the City had already initiated eviction

proceedings against the Dietrich Trust (the actual lessor of the Property) in early

2014.  (Dkt. 20-14, Pg ID 268).  Moreover, the Release itself allowed plaintiff a

30-day extension to vacate the premises.  *Id.*  Plaintiff, himself an attorney, also

consulted with an attorney and represented the following with respect to signing

the Release:

> **Legal Consultation; Voluntary Act**. The Dietrich
> Parties represent and agree that it has thoroughly
> discussed all aspects of this Agreement with its attorney

13

and that it has carefully read, understands, and has full knowledge of the provisions of this Agreement and that it has voluntarily and of its own free will and without any duress entered into this Agreement. The Dietrich Parties further represent and agree that it is not relying on any promise, representation, or statement of the City or its agent, employees, officers, directors, accountants or attorneys or on any promises, conditions, terms, statements, or representations not expressly contained herein.

(Dkt. 20-14, at Pg ID 270) (emphasis in original). For this alternative reason, the undersigned concludes that plaintiff has not met the standard, even at the pleading stage, of sustaining a claim that the Release is ineffective due to duress.

### 3. Sanctions

Defendants also seek sanctions under Fed. R. Civ. P. 11. Federal Rule of Civil Procedure 11(b) states that, by filing a "pleading, written motion, and other paper" with the court, an attorney or an unrepresented party is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... [,] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Michigan Division-Monument Builders of North America v. Michigan Cemetery Ass'n*, 524 F.3d 726, 738-739 (6th Cir. 2008) (quoting Fed. R. Civ. P. 11(b)). "[I]n this circuit, the test for the imposition of Rule 11 sanctions is whether the

14

individual attorney's conduct was reasonable under the circumstances." *Id.* at 739

(quoting *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)).  The test

of reasonableness under the circumstances is an objective standard.  *Century*

*Prods., Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir. 1988).  This objective standard

is intended to eliminate any "empty-head pure-heart" justification for patently

frivolous arguments. *Nieves v. City of Cleveland*, 153 Fed. Appx. 349, 353 (6th

Cir. 2005).

Rule 11 "stresses the need for some prefiling inquiry into both the facts and

the law to satisfy the affirmative duty imposed by the rule." *Albright v. Upjohn*,

788 F.2d 1217, 1221 (6th Cir. 1986).  A good-faith belief in the merits of a case is

insufficient to avoid Rule 11 sanctions. *Mann*, 900 F.2d at 958. Sanctions are

mandatory in the event that the court determines that Rule 11 has been violated,

but the court has "wide discretion" in delineating the extent of the sanctions

imposed. *Albright*, 788 F.2d at 1222.  "The standard for sanctioning parties is the

same as that for counsel: reasonableness under the circumstances per Rule 11, or

'in bad faith, vexatiously, wantonly, or for oppressive reasons' under this Court's

inherent sanctioning power." *Adams v. Penn Line Services, Inc.*, 2009 WL

1514605, *4 (N.D. Ohio 2009).  Rule 11(c) provides, "[i]f, after notice and a

reasonable opportunity to respond, the court determines that Rule 11(b) has been

violated, the court may impose an appropriate sanction on any attorney, law firm,

15

or party that violated the rule or is responsible for the violation." Fed. R. Civ. P.

11(c)(1). *Pro se* plaintiffs are not exempt from Rule 11 sanctions simply because

they are not represented by counsel. *Graham v. Liberty Mut. Ins. Co.*, 2009 WL

1034942, *4 (E.D. Tenn. 2009) (citing *Bus. Guides, Inc. v. Chromatic Communs.*

*Enters.*, 498 U.S. 533, 564 (1991) ("Requiring *pro se* litigants to make the Rule 11

certification ensures that, in each case, at least one person has taken responsibility

for inquiry into the relevant facts and law."); *see also Kaye v. Acme Investments,*

*Inc.*, 2008 WL 4482304, *1 (E.D. Mich. 2008) ("*Pro se* litigants must comply with

Rule 11 no less than attorneys, and must make a reasonable inquiry as to whether

the pleading in question is well-grounded in fact and warranted by existing law.").

The primary purpose of Rule 11 sanctions is to deter future conduct of a like

nature. *Kaye*, at *1. Notably, a plaintiff's intentional misrepresentation on the

record is serious misconduct warranting dismissal as a sanction. *Amadasu v.*

*General Revenue Corp.*, 2008 WL 207936, *5 (S.D. Ohio 2008).

The undersigned first notes that defendants represented that they complied

with Rule 11's safe harbor provision. (Dkt. 24, at Pg ID 289) (defendants' counsel

sent a copy of the motion for sanctions and accompanying brief to plaintiff).

Defendants move for sanctions under Rule 11 because the Complaint in this action

was filed despite obvious application of the *Rooker-Feldman* doctrine and because

plaintiff's Complaint fails to state a claim for relief. Defendants point out that

16

plaintiff was cautioned regarding the application of the *Rooker-Feldman* doctrine

by them and also by the District Court when plaintiff attempted to file a motion for

reinstatement in 2014.  (*See* Dkt. 24, Exs. J & K).  In denying plaintiff's motion to

reinstate, Judge Berg "caution[ed] Plaintiff to carefully review the arguments

raised in Defendants' proposed motion to dismiss, particularly those related to the

*Rooker-Feldman* doctrine."  (Dkt. 24, Pg ID 297).

Despite these warnings, plaintiff persisted in maintaining his claims.  In

similar circumstances courts in this district have not hesitated to impose Rule 11

sanctions.  *See e.g.*, *J. Edward Kloian Found. v. Findling*, 2013 WL 6859143, *7-

8 (E.D. Mich. Dec. 30, 2013); *Musilli v. Googasian*, 2006 WL 3030974, *6 (E.D.

Mich. Oct. 23, 2006; *Lund v. Citibank (West) FSB*, 2007 WL 3408468, *3 (E.D.

Mich. Nov. 14, 2007).  And, the undersigned concludes the fact that plaintiff was

cautioned by Judge Berg in 2014 regarding the application of the *Rooker-Feldman*

doctrine to his claims makes sanctions that much more appropriate in this case.

The undersigned therefore **RECOMMENDS** that defendants' motion for

sanctions be **GRANTED** and leaves it to the district court to fashion an

appropriate remedy.

> 4.    *Plaintiff's motion for summary judgment*

Because the undersigned has recommended that defendants' motion to

dismiss [Dkt. 20] be granted, the court *a fortiori* recommends that plaintiff's

motion for summary judgment [Dkt. 31] be **DISMISSED AS MOOT.**

## IV.   RECOMMENDATION

Based on the above, the undersigned recommends that the district court

**GRANT** defendants' motion to dismiss [Dkt. 20].  The undersigned further

recommends that the district court **GRANT** defendants' motion for sanctions [Dkt.

24].  The court will simultaneously recommend that plaintiff's motion for

summary judgment [Dkt. 31] be **DISMISSED AS MOOT**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local

Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further

right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health

and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 12, 2017                              s/Stephanie Dawkins Davis
                                                    Stephanie Dawkins Davis
                                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 12, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by United States Postal Service to the following non-ECF participant: Edgar J. Dietrich, 15832 Windmill Pointe, Grosse Pointe Park, MI 48230.

                                                    s/Tammy Hallwood
                                                    Case Manager
                                                    (810) 341-7887
                                                    tammy_hallwood@mied.uscourts.gov